CRARY v. HUNTER. See Case No. 15,426.

CRASE (JENNY v.). See Case No. 7,285.

CRAVEN (WILLIAMS v.). See Case No. 17,-719.

## Case No. 3,363.

### In re CRAWFORD.

[3 N. B. R. 698 (Quarto, 171);[1] 3 Am. Law T. 169; 1 Am. Law T. Rep. Bankr. 210.]

District Court, E. D. Michigan. June, 1870.

BANKRUPTCY—PROVABLE DEBTS.

Is a debt which exists at the time of the actual adjudication of bankruptcy, although not existing at the time of filing the petition for adjudication, provable against the bankrupt's estate? Is a simple contract debt existing at and before the filing of the petition for adjudication of bankruptcy, on which a judgment has been rendered after such filing, the same debt within the meaning of the several provisions of the bankrupt act, relating to the proof of claims against the estates of bankrupts? *Held,*

---

[1] [Reprinted from 3 N. B. R. 698 (Quarto, 171), by permission.]

it is the intention of the act that such debts, and such only, as existed at the time of the filing the petition for adjudication of bankruptcy are provable against the bankrupt's estate.

[Cited in Re Gallison, Case No. 5.203; Burpee v. First Nat. Bank of Janesville, Id. 2.185; Re Riggs, 8 N. B. R. 92; Re Broich, Case No. 1,921. Overruled in Re Hennocksburgh, Id. 6,367. Approved in Re Nounnan, 7 N. B. R. 22; Re Ward, 12 Fed. 327.]

[On certificate of register in bankruptcy.]

At Detroit, in said district, on the 28th April, 1870. Before Mr. Hovey K. Clarke, Register: I, the above named register, do hereby certify that in the course of proceedings before me at this date, in the above bankruptcy, Milton H. Butler offered his deposition to prove his claim against said bankrupt's estate. The deposition shows that the claim originated in the indorsement to the claimant, by said bankrupt, [Francis Crawford,] of a promissory note which became due on the 23d day of April, 1869; that the bankrupt was duly charged by notice, and that the claimant commenced a suit in the circuit court for the county of Wayne on the 3d day of May, and on the 15th day of September following recovered a judgment against said bankrupt on said liability. The petition for the adjudication of bankruptcy in this case was filed on the 25th day of June, 1869, after the commencement of said suit, and before the rendition of the judgment. The order of adjudication of bankruptcy was not actually entered until the 6th day of April, 1870. The judgment under which the claimant now claims not having been rendered "at or before the filing of the petition" (see form No. 22, prescribed by the general orders of the supreme court), I declined to accept and file proof thereof, on the ground that the debt was not provable under the bankrupt act. The said claimant desiring to take the opinion of the district judge upon the points presented by his offer to prove his claim, I respectfully submit a certificate to be signed by the judge; if he approve thereof, as provided by the 6th section of the bankrupt act of 1867 [14 Stat. 520], together with my opinion upon the questions presented. The questions are: First. Is a debt which exists at the time of the actual adjudication of bankruptcy, although not existing at the time of filing the petition for adjudication, provable against the bankrupt's estate? Second. Is a simple contract debt existing at and before the filing of the petition for adjudication of bankruptcy, on which a judgment has been rendered after such filing, the same debt within the meaning of the several provisions of the bankrupt act relating to the proof of claims against the estates of bankrupts?.

Opinion of the Register: Section 19 declares what debts "may be proved against the estate of the bankrupt." It specifies several classes of debts, in four of which, time becomes a material question. The words employed in the act to fix the time, which, in the specified cases, becomes material, are— "the time of the adjudication of the bankruptcy"—"after the adjudication of bankruptcy"—"after the proceedings in bankruptcy were commenced," and "up to the time of the bankruptcy." What time is intended by the "commencement of proceeding" is not left to construction. It is expressly declared by section 38 to be "filing of a petition for adjudication in bankruptcy, either by a debtor on his own behalf, or by any creditor against a debtor." Of course, the order of adjudication must, in respect to time, be after the filing of the petition praying for such adjudication, and practically, and especially in involuntary cases, the order may not be made for weeks or months after the commencement of the proceedings. This sometimes occurs also in voluntary cases, when delays arise from the necessity of amending schedules, or from other causes, and it becomes a very serious question, whether it will be consistent with other provisions of the act, to hold that a person for whose adjudication as a bankrupt a petition has been filed, may continue down to the time when the order of adjudication was entered to create debts, which may be proved against his estate. If so, a very striking incongruity results. By section 14 it is enacted, that the instrument of assignment, by which the assignee takes the title to the property of the bankrupt, "shall relate back to the commencement of said proceedings in bankruptcy"—which section 38 declares to be the time of filing the petition, and by the form of the deed, prescribed by the general orders of the supreme court, form No. 18, it is made necessary to specify the particular day with reference to which the conveyance is to take effect. Subsequently acquired property is not within the terms of the deed; and it is supposed to be well settled by repeated adjudications, that it does not pass. To hold that a subsequently created debt—that is, subsequently to the filing of the petition—can be proved against the bankrupt's estate, while property subsequently acquired cannot be reckoned as a part of that estate, would seem to be what the law never could have intended. The uses, not only inequitable in effect, but fraudulent in purpose—which such a construction of the law might serve—are too obvious to require illustration. Other parts of the bankrupt act, moreover, conflict with the theory that a debt may be proved that did not exist at the time of the commencement of the proceedings. Section 32 prescribes in terms the form of the discharge which shall be granted to the bankrupt, namely, that he shall "be forever discharged from all debts and claims which by said act are made provable against his estate, and which existed on the ——— day of ———, on which day, the petition for adjudication was filed by or against him." It seems necessary, in view of such express terms as these in the 32d section, to hold that the words, "time of ad-

judication," and "time of the bankruptcy," in the 19th section, must be construed to be equivalent to "the commencement of proceedings"—"at the time of filing the petition;" and a debt which did not exist then cannot be proved. These views, I think, are fully sustained by Patterson's Case [Case No. 10,-815], decided by Judge Blatchford, in the southern district of New York.

The remaining question is, whether a judgment rendered against the bankrupt in favor of the claimant, on the 15th day of September, 1869, was either—1st, a debt due and payable on the 25th day of June, 1869, the day when the petition was filed; or 2d, whether it was a debt then existing but not payable until a future day. It must be one or the other to be provable under section 19. The claimant insists that the deposition he offers, shows his debt to belong to the first of these classes; that at the time of filing the petition, the bankrupt was liable to him as the indorser of a promissory note which becomes due April 23; the indorser was duly charged by notice of non-payment—that on the 3d of May, he commenced a suit against the bankrupt, in which he obtained a judgment against him on the 15th day of September. The records and files of this case show that the petition in bankruptcy was filed after the suit was commenced, and before the judgment was obtained. The claimant, to sustain his right to prove his debt, is obliged to insist that the judgment and the note on which the judgment was rendered, are evidences at different stages of its history of the same debt. If he be correct in this, his right to prove his debt is clear. But this position of the claimant is opposed by the principle, that a judgment extinguishes the liability or contract on which it is rendered. This principle is abundantly supported by authority. Judge Campbell, in Bonesteel v. Tood, 9 Mich. 375, referring to a cause where highly equitable considerations existed against his application (namely, where a judgment had been obtained against one only of two joint debtors), says, "this decision was in accordance with an unbroken line of decisions of the common law, whereby a party electing to take a higher security, and thereby put an end to the liability of one debtor upon the contract, deprived himself of any further claim against the other by destroying the only joint demand." That is, the judgment "puts an end to," "destroys" all previous liability. If so, then, in this case, the judgment of September 15, extinguished the liability created by the indorsement of the note of January 20, and in a subsequent case in the supreme court of this state, where the opinion was delivered by Judge Christiancy (Town v. Smith, 14 Mich. 352), when the equities of the plaintiff and the moral obligations of the defendant both urged a departure from the above principle, the court saw "danger of doing more injury by unsettling the law in other cases than by adhering to it in that. It is not easy to measure the possible mischief of disturbing well-settled principles." In the Williams Case [Case No. 17,705], in the district court for the district of Connecticut, where the question presented was the same as that presented here—whether a debt, on which a judgment had been rendered since the adjudication was provable against the bankrupt's estate: "On this point," Judge Shipman says, "the authorities are numerous and decisive, a debt on which a judgment of law is founded, is merged in that judgment, and extinguished by it. The judgment constitutes a new debt from the time of its recovery."

There is, however, a still later case, that of Brown [Id. 1,975], decided by Judge Blatchford in the southern district of New York, expressly dissenting from Judge Shipman's views in the Williams Case [supra]. Between these distinguished authorities I am compelled to choose. Judge Shipman's decision rests upon and is "in accordance with an unbroken line of decisions of the common law." The ground of Judge Blatchford's decision is not so clear. He says: "If the debt in this case existed at the time of the adjudication it is provable, although the judgment is not provable as such, because it did not then exist." True it did so exist at that time of the adjudication, and under the authority of Judge Shipman and the cases cited by him, it had been extinguished, and a new debt created which did not then exist. Judge Blatchford concedes the correctness of this principle "in ordinary cases," but it has "no applicability," he says, "under the bankrupt law." I have looked into his opinion with some care, to ascertain on what grounds he affirms inapplicability of the principle in bankruptcy practice, conceded to be sound in ordinary cases. These grounds seem to be: 1st, repugnance to section 21; and, 2d, hardship to creditors who may not know of the proceedings. I think the supposed repugnancy arises from a misapprehension of section 21; and the hardship is the other way. Section 21 declares that no creditor whose debt is provable under the act, shall be allowed to prosecute his suit to final judgment. What was the object of this prohibition? I suppose it was to prevent a creditor from obtaining, under the well-settled principles already referred to, a new debt which would not be discharged by the final certificate in that case—for that certificate, as has been already mentioned, discharges only such debts as existed on the day of filing the petition. It is true that permission may be obtained, for a single specified purpose, to proceed to judgment, and doubtless in such a case the common-law principle as to the effect of the judgment would be modified—for it would be in the nature of an inquest out of the bankrupt court to determine a disputed point, and is allowed only for that purpose; and not then, unless leave could be specially granted, and the order granting leave could

of course control its effect. It would seem that it was the common-law effect of a judgment, namely, to create a new debt, which was the occasion of that provision in section 21, which forbids a creditor whose debt is provable to proceed to final judgment. So far then from section 21 being rended nugatory by the continued force of the common-law principle, if a party be not allowed to proceed at will to judgment, the regarding of the principle as having "no applicability under the bankrupt act," takes away the most effective motive for obedience to the section in question. So far from the section being rendered nugatory by giving effect to the common-law principle, it is strongly supported by it, and is in the strictest harmony with it.

The other ground of the inapplicability of the common-law doctrine to cases under the bankrupt act, namely, that of hardship to creditors, seems to be equally unfounded. The hardship is thus stated: "A creditor might go on in ignorance of the adjudication, and obtain a judgment for his debt, and find himself deprived of the power of proving either his debt, or his judgment." The cases of such ignorance will probably be very rare, and if they were as remediless as seems to be supposed, it may well be doubted whether it would be wise to give such a construction to the law as will afford protection to the ignorant few, at the same time that it relieves all others from the consequences of a deliberate violation of the law. But there is, indeed, no hardship. A creditor having obtained a judgment, either in ignorance of the proceedings in bankruptcy, or shrewdly aiming to secure some advantage to himself by obtaining a judgment on his claim, notwithstanding the law forbidding it, can always restore himself to the position he was in before he took his judgment, by moving in the court where it was obtained that it be vacated. Such an order, for such a reason as he would offer, would never be refused. But to allow him to retain his judgment and to prove it, or the debt on which it was founded, against the bankrupt's estate, exposes the bankrupt to the hardship of being compelled, in case of his discharge, to move, in the court where the judgment was rendered, for a perpetual stay of execution, on grounds which the provisions of the bankrupt act would probably sustain. But why should the onus of the preparation of the case, on which to found such a motion, and the expense of the employment of counsel to make it, be thrown on the bankrupt who has himself faithfully conformed to the bankrupt act, in order to avoid the consequences to himself which have followed the violation of the bankrupt act by his creditors? It is to be remembered also that the motion of the bankrupt for a stay of execution would be addressed to the discretion of the court, which would add another element of uncertainty as to his rights, against which he has a right

to claim the protection which the bankrupt court is fully able to afford, but which it cannot do if it allow a judgment rendered since the proceedings were commenced to be proved against the bankrupt's estate.

It is to be observed also that the only effect of refusing to allow the judgment to be proved will be by compelling the creditor to seek the vacation of his judgment; and then, to prove his debt as it exists at the time of filing the petition will be to lose the costs which accrued in obtaining his judgment. In the Brown Case, decided by Judge Blatchford, above referred to, the creditor expressly waived the claim for costs, and the court held that the debt as it stood before adjudication, only, could be proved. And it would seem clearly inequitable to allow costs which have been made by one creditor in proceedings continued to judgment in violation of the bankrupt act, to be paid out of a fund in which all other creditors are interested; and the recovery of these costs is probably a very considerable motive in this particular case for insisting on proving the judgment as such. It is apparent that there is nothing in this case, nor in any case similar in its facts, to call for the exercise of such general equity powers as are sometimes invoked to prevent a technical merger from working injustice. Justice to all the creditors requires that costs which have been made by one or more, should not be paid out of the fund, at the expense of those who have more scrupulously regarded the bankrupt act. I am obliged to say, therefore, that I can discover no reason, resting either on legal principles or any equitable considerations, for the allowance of proof of the claim offered.

All which is respectfully submitted to the decision of the district judge.

John J. Speed appeared and argued the case in behalf of Mr. Butler.

LONGYEAR, District Judge. Milton H. Butler held the bankrupt's indorsement upon which his liability had become fixed, and a suit in a court of law had been commenced, and was pending at the time the petition for adjudication of bankruptcy was filed. Upwards of eight months intervened between the time of filing the petition and the adjudication, and in the meantime Butler had gone on and taken judgment. He now asks to have his judgment proven against the bankrupt's estate, and makes a full showing of all the facts in relation to his claim as above stated. Two objections are urged to his application: First. That the judgment did not exist at the time the petition for adjudication of bankruptcy was filed. Second. That the original claim is merged in the judgment, and therefore it cannot be proved against the bankrupt's estate.

The register, Mr. H. K. Clarke, after reciting the above facts, certifies that, in his opinion, both objections ought to be sustained, and the debt rejected.

Held, as to the first objection: From a comparison of different provisions of the bankrupt act, I am satisfied that it is the intention of the act that such debts, and such only, as existed at the time of the filing of the petition for adjudication of bankruptcy, are provable against the bankrupt's estate. Any other construction would lead to endless complications and difficulty. The language of section 19, "that all debts due and payable at the time of the adjudication of bankruptcy," may be proved, etc., has reference to the condition of the debt as to its maturity or time of payment. This construction is borne out by the very next sentence, which is as follows: "And all debts then existing, but not payable until a future day," etc. This construction makes the provisions of the act harmonious. In re Patterson [Case No. 10,815].

I, therefore, fully concur with the register in his opinion that a debt not existing at the time of filing the petition for adjudication in bankruptcy is not provable against the bankrupt's estate. I also fully concur with the register in his opinion that the debt upon which a judgment is founded is merged in the judgment, and that thereafter all remedies and proceedings for the collection of the debt must be based upon the judgment. These propositions are too well settled to admit of dispute, or need any argument to support them. But I entirely dissent from the opinion of the register in the application he would make of this doctrine. And in doing this I must also dissent from the opinion of Judge Shipman, district judge for the district of Connecticut, in Re Williams [Case No. 17,705]. Judge Shipman there says: "The debt, therefore, * * * was extinguished by the judgment." "It no longer existed." "The judgment itself constitutes a debt; but it had no existence at the time of the adjudication of bankruptcy, and is not therefore provable against the bankrupt's estate." The whole difficulty in the application of this doctrine of merger by judgment to a case like the present, originates in a mistaken theory; and that theory is advanced in the first sentence of the language of the learned judge above quoted, viz., that the debt is extinguished by the judgment. The debt is not extinguished. The instrument, contract, or obligation upon which the debt arose is extinguished, but not the debt. The debt remains. If this were not so, the judgment would destroy itself by extinguishing the very foundation upon which it is built. The debt was founded on contract; it is now founded on judgment, but it is nevertheless the same debt. A judgment operates to extinguish a debt only when it produces the fruits of a judgment. See Bank of the Metropolis v. Guttschlick, 14 Pet. [39 U. S.] 19, 32; U. S. v. Hoyt [Case No. 15,409]; Clark v. Rowling, 3 Comst. [N. Y.] 216. The judgment operates as a change of remedy merely. It is a security of a

higher nature than before. It is still but a security for the original cause of action. Drake v. Mitchell, 3 East, 258, 259.

Again: It is often permitted in equity, and sometimes at law for particular purposes, to inquire into the claim or debt upon which the judgment is founded, not as a means enforcing the claim anew, but of showing the relations of the judgment and the judgment creditor to other things and persons. For instance, in the case of an attempt to enforce the collection of a judgment against property alleged to have been conveyed in fraud of creditors, the judgment may not have been rendered until after the conveyance, in which case, so far as the judgment shows, the judgment creditor was not a creditor at all at the time of the conveyance, and therefore could not have been defrauded. In such cases the judgment creditor is always allowed to go back of his judgment and prove the claim or debt upon which it is founded; and if it appears that such claim existed at the time of the conveyance, the judgment creditor's relation of creditor will for this equitable purpose be allowed to relate back to that time, although it was anterior to the rendition of the judgment. Here the judgment creditor is allowed to show that the debt upon which the judgment was founded existed at a certain time in order to establish his right to attack the validity of the conveyance as against the judgment, and to have the judgment satisfied out of the property conveyed. So, in the bankruptcy court, a court proceeding upon equitable principles, by parity of reasoning, the judgment creditor, in the absence of fraud or other evil practice in the obtaining of his judgment or in the use he has attempted to make of it, should be permitted to go back of his judgment and show what the claim or debt was upon which it was founded, and if it appears, as it does in this case, that such claim or debt was in existence at the time of filing the petition for adjudication of bankruptcy, his relation of creditor to the bankrupt's estate, although it is by judgment, should on equitable principles be allowed to relate back to that time, notwithstanding it was anterior to the rendition of the judgment; and he should be permitted to prove his judgment against the bankrupt's estate. The criterion is, that the debt existed at the time of filing the petition, no matter whether the security or remedy has been changed or not, or in what form it may exist at the time it is presented; if it, the debt, existed at the proper time, it is provable.

It will be seen that I arrive practically at the same result as the learned district judge of the southern district of New York, in Re Brown [Case No. 1,975], although by a somewhat different route. Judge Blatchford in that case uses the following language: "The judgment as such is not to be proved, but the amount of the debt or claim as it stood * * * is to be proved." In

this I do not concur. The "debt or claim as it stood" at the time of filing the petition, is merged in the judgment, and therefore the judgment must be proved, it anything; and I hold that the judgment is provable, not because it existed at the proper time, but because the debt constituting the foundation, the soul, the essence of the judgment, did exist at that time. By taking this view of the subject, all difficulties vanish; every person will receive what justly and equitably belongs to him, without violating any principle of law or equity, or unsettling or disturbing any established doctrine, or coming in conflict with any of the provisions of the bankrupt act; if the bankrupt receives his final discharge, the judgment being the thing directly acted upon by the bankruptcy proceedings, will be as effectually extinguished as if it were discharged upon the records of the court; and if he does not receive his discharge, the judgment will of course be satisfied to the full extent of the dividends which shall have been paid upon it. The costs, however, which accrued subsequent to the filing of the petition for adjudication of bankruptcy do not stand upon the same footing as the judgment for the debt. Costs are not, like interest, an incident of the debt. They are an incident of the legal proceedings instituted and prosecuted for the collection of the debt; they are for reimbursement merely. Therefore, any costs which may have accrued subsequent to the time of filing the petition cannot be said to constitute a claim or debt existing at that time, and should be excluded in making up the amount upon which dividends are to be made in the bankruptcy proceedings.

Let it be certified accordingly.